STATE of Wisconsin, Plaintiff-Respondent,

v.

Lee Roy CAIN, Defendant-Appellant-Petitioner

Supreme Court

*No. 2010AP1599–CR. Oral argument March 6, 2012.
—Decided June 28, 2012.*

2012 WI 68

(Also reported in 816 N.W.2d 177.)

1

4

For the defendant-appellant-petitioner, there were briefs by *Patrick R. Donnelly* and *Faun M. Moses,* and oral argument by *Faun M. Moses,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Thomas Balistreri,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

¶ 1. MICHAEL J. GABLEMAN, J. We review an unpublished decision of the court of appeals[1] affirming an order of the Marquette County Circuit Court, Richard O. Wright, Judge.

¶ 2. The question before us is whether Lee Roy Cain ("Cain") should be allowed to withdraw his plea of no contest to correct a manifest injustice. Cain argues that this court should review whether his plea was knowing, intelligent, and voluntary, and if it was not, determine that he is entitled to automatic withdrawal of his plea in order to correct a manifest injustice.

¶ 3. We conclude that the record, when viewed in its totality, does not support withdrawal of Cain's plea.

---

[1] *State v. Cain,* No. 2010AP1599–CR, unpublished slip op. (Wis. Ct. App. Aug. 11, 2011).

Accordingly, we conclude that Cain has not met his burden of showing by clear and convincing evidence that allowing the withdrawal of his no contest plea is necessary to correct a manifest injustice.

## I. FACTS AND PROCEDURAL HISTORY

¶ 4. Cain, a sixty-five year old resident of Montello, Wisconsin, makes his living by creating and marketing ceramic lawn ornaments and garden art. On November 26, 2007, law enforcement officers executed a search warrant issued for Cain's property. While searching Cain's residence and workshop, they discovered a hidden room. According to the resulting report from law enforcement, the hidden room contained a marijuana growing operation, complete with gymnasium-style lighting, a ventilation system, and 16 healthy, adult marijuana plants that were capable of yielding a substantial quantity of marijuana.

¶ 5. Consequently, a criminal complaint was filed on December 7, 2007, charging Cain with four separate crimes: 1) maintaining a drug trafficking place in violation of Wisconsin Statutes section 961.42(1); 2) possession with intent to deliver tetrahydrocannabinol ("THC")[2] in an amount of more than 200 grams but not more than 1,000 grams, or more than four plants containing THC but not more than twenty plants containing THC in violation of § 961.41(1m)(h)2.; 3) manufacturing THC in an amount of more than 200 grams but not more than 1,000 grams, or more than four plants containing THC but not more than twenty

---

[2] THC is the main psychoactive ingredient in marijuana. *State v. Buchanan,* 2011 WI 49, ¶ 6, 334 Wis. 2d 379, 799 N.W.2d 775.

plants containing THC, in violation of § 961.41(1)(h)2.;[3] and 4) possession of drug paraphernalia, in violation of § 961.573(1). The criminal complaint accurately reflected that a violation of § 961.41(1)(h)2. is a Class H felony, punishable by a fine in an amount up to $10,000, imprisonment for up to six years, or both. *See* § 939.50(3)(h).

¶ 6. Cain waived his right to a preliminary hearing, and the State filed an information alleging the four charges set forth in the criminal complaint. At the arraignment, Cain entered a plea of not guilty as to all counts, and the case was set for jury trial. However, the morning that the case was scheduled for trial, Cain entered into a plea agreement with the State. In exchange for Cain's plea of no contest on Count III, the manufacturing charge, the State agreed to dismiss the remaining three counts recited in the information.

¶ 7. The record reflects that at the plea hearing, Cain was actively engaged, sometimes in response to questioning from the circuit court, and sometimes on his own initiative. During the course of the hearing, Cain stated, inter alia, that he did not believe that he "would have a fair trial," that the only person in "the system" that he had any respect for was the circuit court judge, that "everyone . . . is a buncha liars," and that his current situation was a result of "having a

---

[3] Wisconsin Statutes section 961.41(1)(h)2. states:

If the person violates this subsection with respect to [THC], included under s. 961.14 (4) (t), or a controlled substance analog of [THC], and the amount manufactured, distributed or delivered is:

. . . .

2. More than 200 grams but not more than 1,000 grams, or more than 4 plants containing [THC] but not more than 20 plants containing [THC], the person is guilty of a Class H felony.

dispute with a little rich horse guy." As part of the lengthy plea colloquy (13 pages of transcript), the following exchange took place between the circuit court and Cain and his attorney:

> THE COURT: Before I can accept that plea I need to determine whether or not it's being entered knowingly, voluntarily, and intelligently. [Defense counsel], you have had enough contact with him [Cain] that you believe that he is making this plea freely and voluntarily?
>
> [DEFENSE COUNSEL]: Yes, Your Honor. We've discussed all the various counts, the consequences, what we would plan to do, the procedure, and so on, yes.
>
> THE COURT: Okay. Is that true, Mr. Cain?
>
> MR. CAIN: Somewhat.
>
> [DEFENSE COUNSEL]: We've discussed the evidence in the case and the benefits of entering a plea, the risks of going to trial.
>
> THE COURT: And you understand what you're doing?
>
> MR. CAIN: *I had four plants in my house[,] okay?* That's it. And I — whatever this guy is — I have no other choice. . . .
>
> THE COURT: Well, that's — might be your wise choice, but that's —
>
> MR. CAIN: Yup.
>
> THE COURT: You know there's different reasons for entering a plea?
>
> MR. CAIN: Right.
>
> THE COURT: The most basic reason is whether or not you think you're gonna win or lose. That's the way I look at it.

(emphasis added).

8

¶ 8. Regarding what the State would be required to prove to convict him of manufacture of THC, the circuit court held the following exchange with Cain:

THE COURT: On this charge they would have to show that — you know, "manufacture" sounds like a funny word, but growing would be manufacture. Controlled substance in this case containing the [THC]. They would also have to show in this particular case that it was more than four plants. And they would have to show that you were doing that intentionally. Well, not like it was weeds growing somewhere or anywhere, but that you were doing it intentionally. You understand that you're waiving the right to have those things proved beyond a reasonable doubt?

MR. CAIN: Yup. . . .

¶ 9. Based on the plea colloquy, the circuit court determined that "the plea [was] entered knowingly, voluntarily, and intelligently."

¶ 10. The circuit court next turned to a discussion of the factual basis for the plea. Cain, through his attorney, stipulated that the criminal complaint, which states that law enforcement officers discovered 16 marijuana plants in Cain's residence, sufficed as the factual basis for the plea. However, the circuit court insisted that the State reiterate on the record, for Cain's benefit, the factual basis for the plea. Complying with the circuit court's instruction, the prosecutor restated the factual basis contained in the criminal complaint—that law enforcement officers discovered 16 marijuana plants in Cain's workshop—and the circuit court determined that there was a factual basis for the plea.

¶ 11. At the close of the plea hearing, the circuit court accepted Cain's plea and ordered the preparation of a pre-sentence investigation report ("PSI"). The PSI

9

described the facts surrounding Cain's offense in much the same manner as the criminal complaint: that law enforcement officers discovered 16 marijuana plants in Cain's workshop. The PSI outlined that Cain is a Vietnam War veteran, and that he receives 100% disability because he suffers from post-traumatic stress disorder resultant from his military service. This disability, according to Cain, was the reason that he used marijuana.

¶ 12. The PSI also related a summary of the probation agent's discussion with Cain. In that discussion, Cain told the agent that he had begun growing marijuana "six months prior" and that it was for his own personal use. Additionally, he related to the probation agent that the plants found were not even in the "flowering stage." Cain told the agent that "he made a mistake" and that "the law is the law," but that he had made that mistake "within his own home" and that he did not need to be told what to do.

¶ 13. At the sentencing hearing, the court offered Cain the opportunity to contest the accuracy of the PSI. Cain's attorney, speaking on his behalf, declined to do so, stating that he and Cain had reviewed the report, believed it to be accurate, and had nothing to add. At the conclusion of testimony, the State sought a withheld sentence, placement on probation for a period of three years, and four to six months of conditional jail time.

¶ 14. Cain's attorney argued, based on Cain's military service, prior record, self-employment, and "positive character," that he should receive a lesser sentence. In addressing the court, he stated: "I would ask you to consider this particular infraction, even with the 16 plants, as on the lower end of [the] continuum of [C]lass H felonies." Accordingly, Cain's attorney requested "straight probation[,] with no jail."

10

¶ 15. When the circuit court provided Cain the opportunity to speak at the sentencing hearing, Cain stated that he was not a marijuana dealer, but that he smokes marijuana to help himself deal with post-traumatic stress disorder and to get to sleep. While concluding his statements, Cain related the following to the court:

> This last thing, I say, there wasn't no quantity of marijuana in my house. It was a joint. And those five plants which got excavated. That's what was in my house. I have no reason to lie about this[,] okay? And — it — it — I didn't have a whole — you know, like this. And that's what it sounds like: That I had this great amount.

¶ 16. After listening to Cain's statement and summarizing the factors[4] it considered in regard to sentencing, the circuit court withheld sentence, and placed Cain on probation for a period of two years.

¶ 17. Six months after the sentencing hearing, Cain filed a motion for post-conviction relief, requesting that the circuit court allow him to withdraw his plea. This motion alleged that at the time Cain entered his plea, "the court failed to determine in a personal colloquy whether Cain admitted to facts that would sustain a conviction for the charged offense." Specifically, the motion stated that Cain did not admit to having *more* than four marijuana plants at the time of the plea colloquy; instead, the motion asserted that he admitted to having only four plants. Therefore, Cain argued, he was entitled to withdraw his plea to correct a manifest injustice.

---

[4] These factors included the seriousness of the offense, the character and rehabilitative needs of the defendant, and the need to protect the public. *State v. Tiepelman,* 2006 WI 66, ¶ 42, 291 Wis. 2d 179, 717 N.W.2d 1.

¶ 18. The circuit court held a hearing on Cain's post-conviction motion. At the hearing, Cain's attorney argued that a circuit court may accept a defendant's plea only where the defendant admits to each part of the offense that the State would be required to prove beyond a reasonable doubt. Cain's attorney noted that Cain had been charged with manufacture of more than four but less than twenty marijuana plants, but argued that because Cain admitted at the plea hearing to manufacture of only four plants, he did not plead guilty to the charged offense. The circuit court denied Cain's post-conviction motion, determining that Cain's plea was entered knowingly, intelligently, and voluntarily.

¶ 19. Cain appealed, arguing that plea withdrawal was required to avoid manifest injustice. *State v. Cain,* No. 2010AP1599–CR, unpublished slip op., ¶ 16 (Wis. Ct. App. Aug. 11, 2011). The court of appeals affirmed the decision of the circuit court, concluding that Cain had "not carried his burden of showing by clear and convincing evidence that allowing him to withdraw his plea is necessary to correct a manifest injustice." *Id.,* ¶ 2. Cain petitioned this court for review, which we granted.

## II. STANDARD OF REVIEW

¶ 20. Cain asks this court to review the circuit court's denial of his post-conviction motion to withdraw his plea of no contest. A circuit court's decision to permit the withdrawal of a plea is ordinarily a matter of the circuit court's discretion, and we therefore review the circuit court's determination under an erroneous exercise of discretion standard. *State v. Thomas,* 2000 WI 13, ¶ 13, 232 Wis. 2d 714, 605 N.W.2d 836 (citing

*State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, ¶ 32, 579 N.W.2d 698 (1998)); *see State v. Spears,* 147 Wis. 2d 429, 434, 433 N.W.2d 595 (Ct. App. 1988). Further, we recognize that in accepting a plea, the circuit court must make findings of fact. We do not disturb a circuit court's findings of fact, except in situations where those findings are contrary to the great weight and clear preponderance of the evidence. *State v. Bangert,* 131 Wis. 2d 246, 283–84, 389 N.W.2d 12 (1986) (citing *State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984)). Therefore, "we must ensure that the circuit court's determination was made upon the facts of record and in reliance on the appropriate and applicable law." *Schwarz,* 219 Wis. 2d 615, ¶ 32 (citing *Bangert,* 131 Wis. 2d at 289); *see State v. Hunt,* 2003 WI 81, ¶ 52, 263 Wis. 2d 1, 666 N.W.2d 771 (citing *State v. Shillcutt,* 116 Wis. 2d 227, 238, 341 N.W.2d 716 (Ct. App. 1983) (noting that appellate courts "will uphold a discretionary decision if there are facts in the record which would support the trial court's decision . . . .")).

¶ 21. However, where "a defendant establishes a denial of a relevant constitutional right . . . withdrawal of the plea is a matter of right." *State v. Van Camp,* 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997) (citing *Bangert,* 131 Wis. 2d at 283; *State v. Bartelt,* 112 Wis. 2d 467, 480, 334 N.W.2d 91 (1983)). Therefore, if the defendant demonstrates that the plea is constitutionally infirm, "[t]he trial court reviewing the motion to withdraw in such instance has no discretion in the matter." *Id.* (citation omitted). In such cases, this court independently reviews the trial court's determination. *See State v. Cross,* 2010 WI 70, ¶ 14, 326 Wis. 2d 492, 786 N.W.2d 64, *cert. denied,* 562 U.S. __, 131 S. Ct. 1044 (2011).

13

## III. DISCUSSION

¶ 22. The issue presented by this case is whether Cain should be allowed to withdraw his plea of no contest to correct a manifest injustice. To resolve this issue, we first review the requirements for a valid plea, as well as the manifest injustice test. We turn to the requirements for a proper plea.

### A. Requirements for a Valid Plea

¶ 23. The due process protections contained in the Fourteenth Amendment to the United States Constitution require that in order for a trial court to accept a defendant's plea, the court must find that the defendant's plea was knowingly, intelligently, and voluntarily made. *Cross,* 326 Wis. 2d 492, ¶ 16 (citing *State v. Brown,* 2006 WI 100, ¶ 25, 293 Wis. 2d 594, 716 N.W.2d 906); *see also Brady v. United States,* 397 U.S. 742, 748 (1970). In addition to determining that the plea is knowing, intelligent, and voluntary, the circuit court must find a factual basis for the plea or it cannot accept it. *Thomas,* 232 Wis. 2d 714, ¶ 14; *see also McCarthy v. United States,* 394 U.S. 459, 467 (1969).

### B. Plea Withdrawal and Manifest Injustice

¶ 24. Withdrawal of a plea may occur either before sentencing, or after sentencing. When a defendant moves to withdraw a plea before sentencing, "a circuit court should 'freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution [would] be substantially prejudiced.' " *State v. Jenkins,* 2007 WI 96, ¶ 2, 303 Wis. 2d

157, 736 N.W.2d 24 (quoting *State v. Bollig,* 2000 WI 6, ¶ 28, 232 Wis. 2d 561, 605 N.W.2d 199); *see id.,* ¶ 29 ("[T]he court has consistently articulated a liberal rule for plea withdrawal before sentencing . . . ."). However, this rule should not be confused " 'with the rule for post-sentence withdrawal where the defendant must show the withdrawal is necessary to correct a manifest injustice.' " *Id.,* ¶ 2 n.2 (citing *Dudrey v. State,* 74 Wis. 2d 480, 483, 247 N.W.2d 105 (1976) (citing *State v. Reppin,* 35 Wis. 2d 377, 151 N.W.2d 9 (1967))). Here, Cain did not seek to withdraw his plea before sentencing, so the latter rule applies.

¶ 25. When a defendant moves to withdraw a plea after sentencing, the defendant "carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a 'manifest injustice.' " *Thomas,* 232 Wis. 2d 714, ¶ 16 (quoting *State v. Washington,* 176 Wis. 2d 205, 213, 500 N.W.2d 331 (Ct. App. 1993)); *see State v. Bentley,* 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). Here, the burden is on Cain to prove that plea withdrawal is warranted because "the state's interest in finality of convictions requires a high standard of proof to disturb that plea." *Thomas,* 232 Wis. 2d 714, ¶ 16 (quoting *Washington,* 176 Wis. 2d at 213) (internal quotation marks omitted); *State v. Black,* 2001 WI 31, ¶ 9, 242 Wis. 2d 126, 624 N.W.2d 363. Therefore, in order to disturb the finality of an accepted plea, the defendant must show " 'a serious flaw in the fundamental integrity of the plea.' " *Id.* (citing *State v. Nawrocke,* 193 Wis. 2d 373, 379, 534 N.W.2d 624 (Ct. App. 1995)); *State v. Denk,* 2008 WI 130, ¶ 71, 315 Wis. 2d 5, 758 N.W.2d 775.[5]

---

[5] The burden of proving that post-sentencing plea with-

15

¶ 26. The manifest injustice test was first adopted by this court in *Reppin,* 35 Wis. 2d 377, 386, 390. In that case and others that have succeeded it, Wisconsin courts delineated when a "manifest injustice" occurs, and established the situations in which a defendant is entitled to withdraw his plea. *State v. Daley* sets out the following list of circumstances where manifest injustice occurs:[6]

drawal is not warranted rests with the State in other circumstances. *See State v. Brown,* 2006 WI 100, ¶¶ 36–39, 293 Wis. 2d 594, 716 N.W.2d 906. The burden shifts to the State when the defendant, in a post-conviction motion, "(1) make[s] a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege[s] that the defendant did not know or understand the information that should have been provided at the plea hearing." *Id.,* ¶ 39 (citing *State v. Bangert,* 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986)). Such a motion is commonly referred to as a "*Bangert* motion." *See id.,* ¶ 40. No such motion was filed in this case; Cain's post-sentencing motion alleged only that that "the court failed to determine in a personal colloquy whether Cain admitted facts that would sustain a conviction for the charged offense." Cain has never alleged that he did not know or understand the information that was provided by the circuit court at the plea hearing, and thus never alleged enough to shift the burden to the State. Therefore, the burden to prove, by clear and convincing evidence, that the trial court should have permitted him to withdraw the plea to correct a manifest injustice remains with Cain. *See State v. Thomas,* 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836.

[6] The list provided by *State v. Daley,* 2006 WI App 81, ¶ 20 n.3, 292 Wis. 2d 517, 716 N.W.2d 146 is non-exhaustive. This list derives from *State v. Reppin,* 35 Wis. 2d 377, 385–86 & n.2, 151 N.W.2d 9 (1967), which provided four examples of situations where manifest injustice occurs. These examples were adapted directly from the then-tentative 1967 draft of the American Bar Association Project on Minimum Standards for Criminal Justice. *See Reppin,* 35 Wis. 2d 377, 385; *see also Thomas,* 232 Wis. 2d 714, ¶ 17. Later, when the American Bar Association

1. ineffective assistance of counsel;

2. the defendant did not personally enter or ratify the plea;

3. the plea was involuntary;

4. the prosecutor failed to fulfill the plea agreement;

5. the defendant did not receive the concessions tentatively or fully concurred in by the court, and the defendant did not reaffirm the plea after being told that the court no longer concurred in the agreement; [or],

6. the court had agreed that the defendant could withdraw the plea if the court deviated from the plea agreement.

2006 WI App 81, ¶ 20 n.3, 292 Wis. 2d 517, 716 N.W.2d 146 (quoting *State v. Krieger,* 163 Wis. 2d 241, 251 n.6, 471 N.W.2d 599 (Ct. App. 1991)); *see also State v. Lee,* 88 Wis. 2d 239, 249, 276 N.W.2d 268 (1979); *Ernst v. State,* 43 Wis. 2d 661, 666, 170 N.W.2d 713 (1969).

### C. Cain's Claim is Properly Understood to Allege a Failure to Personally Enter or Ratify the Plea, Not to Allege a Failure to Enter the Plea Knowingly, Intelligently, and Voluntarily

¶ 27. Cain argues that because he admitted to manufacturing only four marijuana plants at the plea

Standards for Criminal Justice were altered to include two additional criteria, Wisconsin courts added those criteria to the non-exhaustive list of situations where manifest injustice occurs. *See State v. Krieger,* 163 Wis. 2d 241, 252 n.6, 471 N.W.2d 599 (Ct. App. 1991); *accord Daley,* 292 Wis. 2d 517, ¶ 20 n.3. Other criteria have been added by later cases. *See, e.g., State v. Lackershire,* 2007 WI 74, ¶ 48, 301 Wis. 2d 418, 734 N.W.2d 23 ("Where undisputed facts cannot constitute the crime charged as a matter of law, the defendant is allowed to withdraw her plea to prevent a manifest injustice.") (citation omitted).

17

hearing, he did not knowingly, intelligently, and voluntarily plead to the offense charged—manufacturing more than four but less than twenty marijuana plants. Despite Cain's claims to the contrary, he is not in substance making the argument that he pled without the requisite knowledge, intelligence, or voluntariness. Rather, he is essentially contending that he *did not plead at all,* in the sense that he did not admit to the manufacture of more than four marijuana plants, as charged in the indictment.

¶ 28. Consequently, Cain's claim that he never admitted that he possessed more than four marijuana plants is for all intents and purposes a claim that he did not "personally enter or ratify the plea." *Daley,* 292 Wis. 2d 517, ¶ 20 n.3. Cain does not suggest that he admitted to possessing more than four marijuana plants, but did so while laboring under some misapprehension, or while suffering coercion, or for any other reason that could be fairly described as going to his knowledge, intelligence, or voluntariness. On the contrary, he concedes, as he must, that there is nothing in the record to indicate any such infirmity. Instead, he argues that he did not admit to possessing more than four marijuana plants, as charged in the indictment. As a result, his claim is best understood as alleging a failure to personally enter or ratify the plea.

### D. The Proper Scope of Review Includes the Entire Record, Not Just the Plea Hearing

¶ 29. Because Cain submits that the circuit court erred in accepting his plea, he believes our review of the record should be limited to the plea hearing alone. He therefore asks us to disregard the balance of the pro-

ceedings before the circuit court, most importantly the sentencing hearing, where he admitted that five plants were in his house. We disagree, and conclude that our review properly considers the entire record, including the sentencing hearing. Our holding is based on well-established legal principles and well-reasoned precedent.

¶ 30. First, it has long been clear that when a reviewing court applies the manifest injustice test, "the issue is no longer whether the . . . plea should have been accepted," but rather whether the plea should be withdrawn. *White v. State,* 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978); *see also Spears,* 147 Wis. 2d at 434; *Thomas,* 232 Wis. 2d 714, ¶ 23. Therefore, when applying the manifest injustice test, it is our role not to determine whether the circuit court should have accepted the plea in the first instance,[7] but rather to determine whether the defendant should be permitted *to withdraw* the plea. This is so because while the plea may have been invalid at the time it was entered, it may be inappropriate, in light of later events, to allow withdrawal of the plea.

¶ 31. In light of that principle, Wisconsin courts have uniformly held that when applying the manifest injustice test, "a reviewing court may look beyond the

---

[7] In fact, the State conceded on appeal that if Cain had not admitted at sentencing that five plants were found in his house, his conviction could not stand. *Cain,* No. 2010AP1599–CR, unpublished slip op., ¶ 29. It is clear that the circuit court erred at the time of the plea hearing, because Cain then admitted to having only four plants. *See Johnson v. State,* 53 Wis. 2d 787, 790, 193 N.W.2d 659 (1972). However, the issue presented to this court is not whether the circuit court erred at the time it accepted the plea, but whether Cain should be allowed to withdraw his plea to correct a manifest injustice.

plea hearing transcript" to the totality of the circumstances. *See State v. Shegrud,* 131 Wis. 2d 133, 138, 389 N.W.2d 7 (1986) (citing *Bangert,* 131 Wis. 2d at 274); *see also State v. Lackershire,* 2007 WI 74, ¶ 60, 301 Wis. 2d 418, 734 N.W.2d 23; *Thomas,* 232 Wis. 2d 714, ¶ 18; *White,* 85 Wis. 2d at 491. "The totality of the circumstances includes the plea hearing record, the sentencing hearing record, as well the defense counsel's statements . . . among other portions of the record." *Thomas,* 232 Wis. 2d 714, ¶ 18. The reviewing court looks at the entirety of the record to determine whether, considered as a whole, the record supports the assertion that manifest injustice will occur if the plea is not withdrawn. We see no compelling reason to depart from our well-established rule that appellate courts may review the entirety of the record when applying the manifest injustice test. *See Thomas,* 232 Wis. 2d 714, ¶ 18; *White,* 85 Wis. 2d at 491. Indeed, as our analysis below demonstrates, this case presents a good illustration of the rule's virtues. In a word, it would simply not make sense to vacate a conviction as the result of an error at a plea hearing when later proceedings unambiguously demonstrate that the error did not give rise to a manifest injustice and that the plea was valid.

¶ 32. Cain resists this conclusion, arguing, on the basis of a single sentence from *Van Camp,* that we should review the plea hearing alone. *Van Camp,* however, does not stand for that proposition. The question there was whether the defendant understood his rights at the plea hearing. In addressing that question, we held that "the reviewing court may look to the record as a whole to show that the defendant understood the waiver of his constitutional rights" even though "the defendant's understanding must be measured at the time the plea is entered." *Van Camp,* 213 Wis. 2d at 149.

In other words, far from cabining judicial review to the plea hearing, the *Van Camp* court explicitly recognized the permissibility of scrutinizing the whole record in order to answer the ultimate question of what the defendant's understanding was at the time the plea was entered. And, in any event, *Van Camp* is inapposite to Cain's claim, no matter how the case is read. For Cain does not assert that he did not *understand* his rights at the time he plead, as was the issue in *Van Camp;* instead, he asserts that his plea was not properly entered.[8] Accordingly, we conclude that our review properly includes the entire record, not just the plea hearing.

E. Application of the Manifest Injustice Test

¶ 33. With these principles in mind, we now evaluate the totality of the record to determine whether Cain personally entered or ratified his plea of no contest.

¶ 34. At the plea hearing, Cain stated, inter alia, that he had only four marijuana plants in his workshop. Yet Cain's attorney stipulated to the facts contained in the criminal complaint, which stated that law enforcement officers found 16 marijuana plants in Cain's workshop. After so stipulating, Cain's attorney listened without objection as the State reiterated, at the request of the court, the facts contained in the criminal com-

---

[8] It is also worth noting that *Van Camp* is procedurally distinct from the case at bar. There, the defendant made a *Bangert* motion, shifting the burden to the State, and triggering the State's duty to prove that the defendant's plea was knowingly, intelligently, and voluntarily entered. *Id.* at 140–41; *see supra* note 5 (explaining *Bangert* motions). Both parties acknowledge, and we agree, that this, unlike *Van Camp,* is not a *Bangert* case; therefore, the burden remains with Cain to prove that withdrawal of his plea is required to avoid manifest injustice. As we show below, that is a burden that Cain has not carried.

21

plaint, including that law enforcement had discovered 16 marijuana plants in Cain's workshop.

¶ 35. At the sentencing hearing, Cain, again with his attorney present, was given the opportunity to contest the PSI, which stated that law enforcement had discovered 16 marijuana plants in Cain's workshop. However, he did not contest the accuracy of the report. In fact, later at the sentencing hearing, Cain's attorney asked the court to "consider this particular infraction, *even with the 16 plants,* as on the lower end of this continuum of [C]lass H felonies." (emphasis added). This statement was not qualified as being merely what the State alleged, but rather constitutes an endorsement of what was recited both in the criminal complaint as well as in the PSI. The record indicates no objection from Cain.

¶ 36. Finally, we agree with the court of appeals that it is clear that Cain admitted at the sentencing hearing that law enforcement officers found more than four marijuana plants when he referred to "those five plants which got excavated" from his house.[9] Although Cain's comments are difficult to follow at times, his statement regarding the number of plants is clear and unequivocal.

---

[9] Cain now asserts that his statement at the sentencing hearing regarding five marijuana plants was a mere "off-hand" statement. We infer from this that he argues that his statement was not meant to be taken seriously. He further argues that because of its "off-hand" nature, we should give less weight to his admission regarding five plants, and more weight to his statement at the plea hearing that he had only four plants. Nothing about the timing, location, or other circumstances of Cain's statements leads us to believe that his statement that his house contained five plants was anything other than a direct admission to the charged offense and a ratification of his plea.

¶ 37. Cain's statements and actions, when viewed in the totality of the circumstances, demonstrate that he personally entered and ratified his plea of no contest. The facts contained in the record indicate that Cain was well aware that he was pleading to the offense of manufacturing more than four marijuana plants, and that he did not maintain that he had four or fewer marijuana plants.[10] Accordingly, we conclude that given the totality of the circumstances, Cain has not met the burden of showing by clear and convincing evidence that allowing the withdrawal of his no contest plea is necessary to correct a manifest injustice.[11]

---

[10] We recognize that when the circuit court denied Cain's post-conviction motion, it gave no indication that it was relying upon the statements Cain made at the sentencing hearing. However, to affirm the circuit court, appellate courts are not required to use the exact same reasoning that the circuit court used in reaching its decision. *State v. Hunt,* 2003 WI 81, ¶ 52, 263 Wis. 2d 1, 666 N.W.2d 771.

[11] Both Cain and the State have argued at length over whether the number of plants is an element of Wis. Stat. § 961.41(1)(h)2. However, we need not answer that question because it relates only to whether Cain's underlying plea was valid when received, a separate issue from whether a manifest injustice warrants the *withdrawal* of the plea. *See White v. State,* 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978). In conformity with our prior practice, we choose to decide this case on the narrowest grounds possible, and not reach the question of whether the number of plants is an element of the charged offense. *See Md. Arms Ltd. P'ship v. Connell,* 2010 WI 64, ¶ 48, 326 Wis. 2d 300, 786 N.W.2d 15 ("[A]n appellate court should decide cases on the narrowest possible grounds.") (citation omitted); *Ehlinger v. Hauser,* 2010 WI 54, ¶ 66, 325 Wis. 2d 287, 785 N.W.2d 328 (citation omitted) (same); *Jenkins v. Chicago, Milwaukee & St. Paul Ry. Co.,* 41 Wis. 112, 117 (1876) ("Our decision must go upon rather narrow grounds, and rest upon the facts of this case.").

## IV. Conclusion

¶ 38. We conclude that the record, when viewed in its totality, does not support withdrawal of Cain's plea. Accordingly, we conclude that Cain has not met his burden of showing by clear and convincing evidence that allowing the withdrawal of his no contest plea is necessary to correct a manifest injustice.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 39. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I write separately to make a few brief points.

¶ 40. I question the majority's decision to recast the defendant's central argument. Majority op., ¶¶ 27–28. The defendant repeatedly asserts in his briefs that *his plea was not knowing, intelligent, and voluntary* because the circuit court accepted the plea even though the defendant denied an element of the offense at the plea hearing. The majority, on the other hand, determines that because there was no "misapprehension, . . . coercion, or . . . any other reason that could be fairly described as going to his knowledge, intelligence, or voluntariness," the defendant is instead arguing that he did not "personally enter or ratify the plea." Majority op., ¶ 28.

¶ 41. I am perplexed by how the majority reframes the defendant's argument.[1] The requirement that a defendant "personally enter or ratify the plea"[2]

---

[1] I acknowledge that the majority followed the lead of the court of appeals. *See State v. Cain,* No. 2010AP1599–CR, unpublished slip op., ¶ 22 (Wis. Ct. App. Aug. 11, 2011).

[2] The majority explains the origin of the rule that it is manifest injustice if a plea is not "personally entered or ratified" at ¶ 26 n.6. The rule appeared in the then-tentative 1967 draft

24

was satisfied in the present case at the plea hearing when the following interaction took place:

> [DEFENSE COUNSEL]: Mr. Cain would enter a plea of no contest, judge.
>
> THE COURT: Is that your plea, Mr. Cain?
>
> LEE ROY CAIN: Yes it is.

¶ 42. The plea hearing transcript in the present case clearly shows that the defendant personally entered the plea. The defendant never argued otherwise, and how could he? Defense counsel stated the nature of the plea, the court asked the defendant if the defendant was making the plea, and the defendant personally said that he was. The majority's decision to recast the defendant's argument along such ill-fitting lines is puzzling.

¶ 43. In *State v. Burns,* 226 Wis. 2d 762, 594 N.W.2d 799 (1999), the court described a scenario in which a defendant actually did not personally enter a plea, and the scenario looked nothing like what occurred in the present case. The court explained:

> The circuit court never mentioned in this plea colloquy that the proposed plea was a plea of no contest and

---

of the American Bar Association Standards Relating to Pleas of Guilty. *See State v. Reppin,* 35 Wis. 2d 377, 385 & n.2, 151 N.W.2d 9 (1967). The American Bar Association standard now provides that "Withdrawal may be necessary to correct a manifest injustice when the defendant proves, for example, that: . . . (B) the plea was not entered or ratified by the defendant or a person authorized to so act in the defendant's behalf." 3 *American Bar Association Standards for Criminal Justice* 14–2.1 (3d ed. 1999), *available at* http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_guilty pleas_blk.html#2.1.

never asked the defendant for his plea. At no time did the circuit court ask the defendant how he pleads to the charge, whether his plea to the charge is no contest, or whether his attorney's statement that the defendant 'is prepared today to change his plea' of not guilty to that of no contest is correct. It is beyond dispute that neither the defendant nor the defense counsel nor the circuit court ever said on the record that the defendant was in fact then and there pleading no contest to the charged offense. Therefore, it is beyond dispute that the defendant did not expressly and personally plead to the charged offense on the record in open court.[3]

¶ 44. The excerpt from the plea hearing transcript above demonstrates that the present case is of a different nature than *Burns*.

¶ 45. Beyond my concern that the majority improperly recasts the defendant's argument as something that it is not, I question why the majority feels the need to recast the defendant's argument at all. As far as I can tell, the outcome of this review does not hinge on the majority's reconstruction of the defendant's argument.

¶ 46. "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.' "[4] There are many ways a defendant can meet this burden. One is to show that a plea was not knowing, intelligent, and

---

[3] *State v. Burns*, 226 Wis. 2d 762, 769, 594 N.W.2d 799 (1999).

[4] *State v. Brown*, 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906 (citations omitted).

voluntary when entered.[5] Another is to show that the plea was not personally entered or ratified.[6]

¶ 47. The majority's recasting of the defendant's argument does not appear to change the standard of review or the scope of the court's review in the present case.

¶ 48. Had the defendant alleged that he did not know or understand the information that should have been provided at the plea hearing in addition to pointing out the error on the face of the plea hearing transcript, the court would be required to remand for an evidentiary hearing without considering the entirety of the record.[7] The defendant in the present case has not made such an allegation and does not request an evidentiary hearing. Rather, the defendant asks this court to make the final determination that because of the error at the plea hearing, he must be allowed to withdraw his plea to prevent a manifest injustice.

---

[5] *Brown*, 293 Wis. 2d 594, ¶ 18. *See also State v. Van Camp*, 213 Wis. 2d 131, 149, 569 N.W.2d 577 (1997) ("[T]he defendant's understanding must be measured at the time the plea is entered.").

[6] *State v. Daley*, 2006 WI App 81, ¶ 20 n.3, 292 Wis. 2d 517, 716 N.W.2d 146.

[7] *See* majority op., ¶ 25 n.5. *See also State v. Howell*, 2007 WI 75, ¶ 70, 301 Wis. 2d 350, 734 N.W.2d 48 (quoting *Brown*, 293 Wis. 2d 594, ¶ 40):

> The State cannot circumvent a defendant's right to an evidentiary hearing under *Bangert* by arguing that based on the record as a whole the defendant, despite the defective plea colloquy, entered a constitutionally sound plea. "If the motion establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations, the court *must hold* a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy." (Emphasis in original.)

¶ 49. While I have not located a case in which a defendant sought plea withdrawal for the exact reason the defendant in the present case seeks plea withdrawal, the general rule seems to be that the court deciding whether plea withdrawal is necessary to prevent a manifest injustice may review the entire record to make that determination.[8] Thus, in a manifest injustice case, whether a defendant's contention is that his plea was not knowing, intelligent, and voluntary when entered, or that his plea was not personally entered and ratified, I believe the court may assess the entire record.

¶ 50. Because the majority's decision to recast the defendant's argument is erroneous and does not seem to drive the outcome of the present case, I write separately.

---

[8] *See, e.g., State v. Byrge,* 2000 WI 101, ¶¶ 54–55, 237 Wis. 2d 197, 614 N.W.2d 477 ("[The defendant] contends that his pleas were not knowingly and intelligently entered because the circuit court did not warn him that the maximum penalty was not merely a life sentence, but a life sentence without the possibility of parole. . . . [A]n appellate court may look to the entire record in the course of its review."); *State v. Shegrud,* 131 Wis. 2d 133, 138, 389 N.W.2d 7 (1986) ("[A] reviewing court may look beyond the plea hearing transcript in reviewing a circuit court's determination that a defendant is not entitled to withdraw a guilty plea."); *State v. Bangert,* 131 Wis. 2d 246, 283, 389 N.W.2d 12 (1986) ("Although a defendant's understanding of the nature of the charge must be measured at the time the plea is entered, the reviewing court may look to the entire record to make such measurement. Similarly, case law prior to this decision states that a reviewing court may consider the record as a whole to show that the defendant understood the waiver of his constitutional rights.") (Citations omitted.); *White v. State,* 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978) ("In applying the manifest injustice test on review, this court may consider the whole record . . . .").