**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 17, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1964-CR**

Cir. Ct. No. 2016CF342

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

NICHOLAS J. PACKER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Shawano County:  JAMES R. HABECK, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Nicholas Packer appeals a judgment convicting him of two counts of recklessly endangering safety by use of a dangerous weapon

and one count of strangulation and suffocation as domestic abuse. Packer also appeals an order denying his postconviction motion for plea withdrawal. Packer contends the circuit court erred by denying him a hearing on his plea withdrawal motion. We conclude the court properly denied the motion without a hearing because the record conclusively demonstrates that Packer was not entitled to withdraw his pleas. We therefore affirm.

## BACKGROUND

¶2 The State initially charged Packer with four felonies (consisting of two counts of attempted first-degree intentional homicide and two counts of strangulation and suffocation) and eight misdemeanors. The charges arose out of an incident in which a heavily intoxicated Packer repeatedly struck and choked his pregnant girlfriend and struck his girlfriend's estranged husband when he attempted to intervene. Packer then pointed a loaded gun at his girlfriend and pulled the trigger multiple times; however, the gun did not fire. The State subsequently filed an Information restating all of the charges in the complaint, except that a misdemeanor battery count was modified to charge a felony battery.

¶3 Packer moved to suppress statements he had made to police on the night of the incident while he was handcuffed on the scene as responding officers investigated. The circuit court denied the motion following a hearing at which two deputy sheriffs testified about their observations and actions at the scene. After the court denied the suppression motion, Packer and the State engaged in plea negotiations.

¶4 Although the parties do not point to any complete statement of the plea agreement in the record, the State does not dispute Packer's assertion on appeal that "it would appear" the parties agreed that Packer was to enter

2

no-contest pleas to two reduced charges of recklessly endangering safety by use of a dangerous weapon and to one of the strangulation counts. In exchange, the State would dismiss and read in the other charges and cap the initial confinement portion of its sentence recommendation to ten years. The agreement was silent as to extended supervision.

¶5 On the day of the plea hearing, the State filed an amended Information with four counts that reduced the two attempted first-degree intentional homicide charges in Counts 1 and 2 to two counts of recklessly endangering safety by use of a dangerous weapon; added a third felony reckless endangerment charge identical to Count 1 as Count 3; renumbered and restated one of the strangulation and suffocation counts as Count 4; and omitted the other previously charged felonies and misdemeanors. Packer provided the circuit court with a signed plea questionnaire indicating that he intended to enter no-contest pleas to Counts 1, 2 and "8," and that the State agreed to dismiss and read in "the remaining counts."

¶6 After reviewing the amended Information and plea questionnaire, the circuit court advised Packer that Count 3 would be dismissed and read in. The court did not ask Packer how he would plead to Counts 1, 2, or 4; did not explain that Count 4 of the amended Information corresponded to Count 8 of the original Information; and did not state that it was dismissing and reading in any of the other counts from the original Information. The court also did not state at the plea hearing that it found a factual basis for the pleas. Consistent with the plea colloquy, but in apparent contradiction to the plea questionnaire, the court entered a judgment of conviction indicating that the sole read-in charge was the additional reckless endangerment count added in the amended Information.

¶7 At sentencing, Packer apologized "for everything that happened that night." He also stated that he knew "exactly how much worse it could have been" because he could have "destroyed four human lives, one before it even started." The only facts Packer challenged about the description of the offense by the State and in the presentence investigation (PSI) were whether Packer had gone to get the gun before or after his girlfriend's ex-husband hit him with a baseball bat and whether Packer had been aware that the safety was on while he was pulling the trigger of the gun.

¶8 After the circuit court followed the State's sentencing recommendation and imposed prison sentences significantly longer than the conditional jail time for which Packer had argued, Packer moved for plea withdrawal. Packer first asserted that the plea colloquy was defective because the court did not "clearly review the terms of the plea agreement with Mr. Packer to be sure he understood them," did not actually ask Packer to enter any pleas to specific counts, and did not "establish there was a factual basis for accepting each of the three counts" of conviction. Packer coupled those assertions with allegations that he did not fully understand the terms of the plea agreement and did not know what facts were being relied upon to support each count of conviction. In addition, Packer claimed that his counsel provided ineffective assistance by failing to discuss with him how many counts were in the amended Information, to which counts he was expected to enter pleas, which counts were to be dismissed and read in, the implications of reading in the dismissed charges, and what facts in the record supported each count.

¶9 The circuit court denied Packer's plea withdrawal motion without an evidentiary hearing. The court first determined that its plea colloquy was defective based on its failure to state that there was a factual basis for the pleas.

4

The court was satisfied, however, that the record conclusively demonstrated that Packer was not entitled to relief on that ground because the facts set forth in the complaint and adduced at the suppression hearing provided an ample factual basis for the pleas, and Packer's comments to the PSI agent and at sentencing further demonstrated that he understood the factual basis of the charges. The court did not address the discrepancies between the plea questionnaire on the one hand, and the plea colloquy and the judgment of conviction on the other, regarding the addition of a third reckless endangerment count, the enumeration of the strangulation count, or what charges were to be dismissed and read in. Packer now appeals.

**DISCUSSION**

¶10    To withdraw a plea after sentencing, a defendant must either: show that the plea colloquy was defective and also allege the defendant did not understand information that was supposed to have been provided; or demonstrate some other manifest injustice undermining the fundamental integrity of the plea, such as coercion, a genuine misunderstanding on the defendant's part, an insufficient factual basis to support the charge, ineffective assistance of counsel, or a failure by the prosecutor to fulfill the plea agreement. *See generally **State v. Bangert***, 131 Wis. 2d 246, 251-52, 389 N.W.2d 12 (1986) (addressing defective plea colloquies); ***Nelson v. State***, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972) (adopting manifest injustice standard); ***State v. Krieger***, 163 Wis. 2d 241, 249-51 & n.6, 471 N.W.2d 599 (Ct. App. 1991) (discussing manifest injustice standard). To obtain a hearing on a postconviction motion, a defendant must allege material facts sufficient to warrant the relief sought. ***State v. Allen***, 2004 WI 106, ¶¶9, 36, 274 Wis. 2d 568, 682 N.W.2d 433.

5

¶11 A defendant who asserts that the procedures outlined in WIS. STAT. § 971.08 (2017-18)[1] or other court-mandated duties were not followed at the plea colloquy (i.e., a *Bangert* violation) and further alleges that he or she did not understand information that should have been provided, is entitled to a hearing on his or her plea withdrawal motion at which the State bears the burden of proving that the plea was nonetheless knowingly, voluntarily and intelligently entered. *State v. Hampton*, 2004 WI 107, ¶¶56-65, 274 Wis. 2d 379, 683 N.W.2d 14; *Bangert*, 131 Wis. 2d at 274. A defendant who seeks to withdraw a plea on grounds constituting a manifest injustice other than a *Bangert* violation (i.e., a *Nelson* claim) is entitled to an evidentiary hearing when the motion alleges facts (including those outside the record) which, if true, would entitle him or her to relief. *State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). In the context of a plea withdrawal claim asserting ineffective assistance of counsel, the facts alleged must establish both that counsel provided deficient performance and that such performance prejudiced the defendant by inducing entry of the plea. *State v. Harris*, 2004 WI 64, ¶11, 272 Wis. 2d 80, 680 N.W.2d 737.

¶12 No hearing is required on a plea withdrawal claim when the defendant presents only conclusory allegations or when the record conclusively demonstrates that the defendant is not entitled to relief. *Nelson*, 54 Wis. 2d at 497-98. Nonconclusory allegations should present the "who, what, where, when, why, and how" with sufficient particularity for the circuit court to meaningfully assess the claim. *Allen*, 274 Wis. 2d 568, ¶23.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶13    We will review the circuit court's decision to deny a plea withdrawal motion without an evidentiary hearing under the de novo standard, independently determining whether the facts alleged, if true, would establish the denial of a constitutional right sufficient to warrant the withdrawal of the plea as a matter of right. *Id.*, ¶9.  In assessing whether the record conclusively demonstrates that no manifest injustice warranting plea withdrawal has occurred, we are not limited to reviewing the transcript of the plea hearing. *State v. Cain*, 2012 WI 68, ¶¶29-32, 342 Wis. 2d 1, 816 N.W.2d 177.  We may consider the entire record, including the sentencing hearing and other events that occurred after entry of the plea, as well as any preliminary proceedings. *Id.*  Our role is to determine not whether the circuit court should have accepted the plea in the first instance but, rather, whether withdrawal of the plea is necessary to correct a manifest injustice.

### I. *Bangert* claims

¶14    Packer contends the plea colloquy was defective because the circuit court: (1) did not "adequately review … the plea terms" to determine Packer's understanding of those charges to which Packer had agreed to enter pleas and those which were going to be dismissed and read-in; and (2) failed to identify any facts in the record to support the pleas.  Packer further renews his accompanying assertions that he did not understand to which charges he was going to enter pleas and which charges were going to be dismissed and read-in, and that he was not aware of what facts were being relied upon to support his pleas.

¶15    Packer's first argument is based upon a misunderstanding of the circuit court's duties under *Bangert*.  Specifically, the court did not have an obligation under *Bangert* to confirm Packer's understanding of the plea agreement.  Rather, the court had an obligation to determine "the defendant's

7

understanding of the nature of *the crime* with which he [or she] is charged and the range of punishments to which he [or she] is subjecting himself [or herself] by entering a plea." ***State v. Brown***, 2006 WI 100, ¶35, 293 Wis. 2d 594, 716 N.W.2d 906 (emphasis added); *see also* WIS. STAT. § 971.08(1)(a). In other words, the court's obligations at the plea hearing focused on ensuring Packer's understanding of the charges in the amended Information, not the original Information.

¶16 The record plainly shows the circuit court satisfied its obligation to ensure that Packer understood the nature of the crimes in the amended Information to which Packer agreed to enter pleas, as well as the penalties for those charges. The amended Information contained three counts of recklessly endangering safety by use of a dangerous weapon—the third of which was dismissed and read in at the start of the plea hearing—and one count of strangulation. During the plea colloquy, the court accurately informed Packer about the elements of the reckless endangerment charges and the strangulation charge, as well as the applicable penalties. The court emphasized that although the two reckless endangerment charges to which Packer was pleading no contest had the same legal elements, Count 1 was premised on facts related to Packer's girlfriend and Count 2 was premised on facts relating to the unborn child. Although the count number for the strangulation charge changed from Count 8 in the original Information and plea questionnaire to Count 3 in the amended Information, it was the only strangulation charge contained in the amended Information and therefore there was no possibility of confusion.

¶17 In addition, the circuit court advised Packer that he would not be convicted of the additional reckless endangerment count and could not be charged with it in the future, but that the court could consider the conduct underlying that

8

charge along with "the past counts they charged you with that are no longer there, because a judge considers the total picture." The manner in which the read-in offenses would be treated was also accurately set forth in the signed plea questionnaire that Packer provided to the court, as were the penalties for the charged crimes.

¶18     In sum, the plea colloquy, which incorporated the plea questionnaire, was not deficient in advising Packer about the nature of the charges contained in the amended Information and their associated penalties, or how the dismissed count from the amended Information would be treated. Whether the charges included in the amended Information conformed with the plea agreement, or with Packer's understanding of the plea agreement—in terms of which counts were supposed to be amended, added, dismissed outright or read in from the original Information—raise separate questions that are not before us on Packer's *Bangert* claims. Such questions relate to matters outside the record, not to the circuit court's colloquy.

¶19     Turning to Packer's second *Bangert* claim, it is true that the circuit court neglected to explicitly state during its colloquy that it found a factual basis for the pleas. However, Packer acknowledged on the plea questionnaire that the court could rely upon the facts in the criminal complaint to find him guilty, he did not dispute the basic facts from the complaint and the PSI at the sentencing hearing, and he does not now dispute that the facts in the complaint, as well as those adduced during a suppression hearing, would provide an adequate factual

basis for the counts of conviction.[2]  Therefore, even if the plea colloquy was deficient in this regard, we are satisfied that the record conclusively demonstrates that Packer is not entitled to plea withdrawal for lack of a factual basis to support his pleas.

## II. *Nelson* claims

¶20    Finally, Packer contends his trial counsel provided ineffective assistance by failing to discuss with him the plea terms and the facts to support each count.   However, the facts alleged in his motion are conclusory and insufficient to establish the prejudice component of a claim for plea withdrawal based on ineffective assistance—that is, Packer fails to explain why he would not have entered his pleas if counsel had provided additional or different information to him.

¶21    Critically, Packer does not specify to which charges he believed he was entering pleas or which charges he believed were to be read in pursuant to the plea agreement, and how those beliefs might have differed from what occurred. For the purpose of this opinion, we will assume Packer believed that he was to enter pleas to an amended Count 1, an amended Count 2 and Count 8 from the original Information, and that Counts 3 through 7 and 9 through 12 from the original Information were to be dismissed and read in, because that is the most reasonable inference we can make from the plea questionnaire and his arguments on appeal.

---

[2] To the extent Packer may be arguing that he did not know what the separate factual basis was for the apparently duplicative reckless endangerment charge that was read in, he does not cite any authority for the proposition that the circuit court needs to establish a factual basis for read-in offenses at the plea hearing.

¶22    The only difference between Packer's apparent understanding of the plea agreement and what actually happened at the plea hearing relates to Count 3. There is no explanation in the record as to how or why a third reckless endangerment count was added to the amended Information, only to be dismissed and read in. However, given that the alleged factual basis for Count 3—charging recklessly endangering the safety of the victim, by pointing a loaded firearm at her and pulling the trigger, under circumstances which show utter disregard for human life—is identical to the alleged factual basis for Count 1, there is no logical reason why the consideration of the apparently duplicative charge as a read-in would affect Packer's calculation regarding whether to go to trial. According to Packer's apparent understanding of the plea agreement, the circuit court was going to sentence Packer for reckless endangerment based upon his conduct of aiming a gun at his pregnant girlfriend and pulling the trigger regardless of whether Count 3 was added and then dismissed and read in. Thus, Packer was not prejudiced by his counsel's claimed failure to discuss with him the plea agreement terms related to Count 3 and the facts related to each count of the amended Information.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11